Craig R. Berne, OSB #874202
craig@hbclawyers.com
Shawn M. Lindsay, OSB #020695
shawn@hbclawyers.com
Adam S. Heder, OSB #151144
adamh@hbclawyers.com
Harris Berne Christensen LLP
5000 Meadows Road, Suite 400
Lake Oswego, OR 97035
Telephone: (503) 968-1475
     Of Attorneys for Eclipse Consulting, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **ECLIPSE CONSULTING, INC.,**<br><br>        Plaintiff,<br><br>  v.<br><br>**BDO USA, LLP**,<br><br>        Defendant. | Case No. 3:17-CV-00826-AC<br><br>**AMENDED PETITION TO COMPEL ARBITRATION PURSUANT TO SECTION 4 OF THE FEDERAL ARBITRATION ACT** |

1.

Plaintiff Eclipse Consulting, Inc. ("Plaintiff" or "ECI") brings this Petition pursuant to Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4, to compel Defendant BDO USA, LLP, to arbitrate in a proceeding currently pending before the Arbitration Service of Portland, Inc., ASP No. 160610.

/ / /

/ / /

## PARTIES

2.

ECI is a Kentucky corporation with its principal place of business currently in Vancouver, Washington. ECI is a business software consultant; it assists businesses in implementing enterprise software applications and in solving business software problems. Important to the current dispute, ECI is licensed to implement the SyteLine EROP software platform, designed by software company Infor Global Solutions, LLC ("Infor").

3.

Defendant is a Delaware limited liability partnership registered to do business in Oregon as a foreign limited liability partnership, with its principal place of business in Chicago, Illinois. Defendant is an accounting and business consulting firm that offers a wide array of consulting, tax, accounting, and business services.

## THE AGREEMENT AND THE PARTIES' ROLES

4.

On December 10, 2014, ECI executed a Master Services Agreement (the "Agreement") with Redi-Carpet, Inc. ("Redi-Carpet"), wherein ECI would assist Redi-Carpet in the installation and implementation of SyteLine enterprise resource planning software into its operations (the "Project").

5.

Section 12.1 of the Agreement contains an arbitration clause, which states:

> All disputes controversies, claims, and defenses arising out of, relating to, or involving this Agreement, whether involving theories of tort, contract, or violation of statutory laws ("Claims") are subject to the following provisions:

> *Arbitration*. Except as to actions, suits or proceedings commenced or maintained by persons not parties hereto, any party may elect to have any Claim be determined by binding arbitration. . . . Unless the parties otherwise agree in writing, the arbitration shall be conducted in Portland, Oregon before a single arbitrator and in accordance with the commercial arbitration rules of the Arbitration Service of Portland, Inc. . . . .

6.

On June 10, 2016, ECI filed a Statement of Claim with the Arbitration Service of Portland, Inc. ("ASP") pursuant to this provision alleging Redi-Carpet breached the Agreement, and an arbitrator was chosen shortly thereafter (the "Arbitration"). Redi-Carpet has not contested the arbitrability of the disputes between it and ECI, and neither party has contested the jurisdiction or authority of the arbitrator.

7.

On July 26, 2016, Redi-Carpet filed and served an Answering Statement and Counter-Claim against ECI, claiming numerous theories of recovery, including breach of contract, fraud, and negligence.

8.

On August 26, 2016, ECI filed a reply to the Answering Statement along with counter-claims to Redi-Carpet's counterclaims.

9.

Discovery is ongoing in the Arbitration, though no depositions have yet taken place. No hearing date has yet been scheduled.

10.

Defendant is a consulting firm hired by Redi-Carpet to consult, manage, and assist in ECI's implementation of the SyteLine software. In connection with its claims against Redi-Carpet, ECI

now wishes to join Defendant as a party in the Arbitration, alleging specifically that Defendant interfered with ECI's relationships with both Infor and Redi-Carpet, and also that, to the extent ECI is found liable to Redi-Carpet in connection with any of Redi-Carpet's counterclaims and a judgment is awarded against it, it should receive either indemnification or contribution from Defendant.

11.

Concurrent with the filing and service of the original Petition in this matter, ECI filed a Statement of Claim against Defendant with ASP, along with a request to consolidate the new matter with the pending matter between ECI and Redi-Carpet, ASP No. 160610.

12.

By correspondence dated August 5, 2016, ECI asked Defendant to participate in the Arbitration, but Defendant, through its attorney, stated on August 11, 2016 that it would refuse to participate in the Arbitration.

### DEFENDANT HAS KNOWINGLY EXPLOITED AND DIRECTLY BENEFITTED FROM THE AGREEMENT AND SHOULD BE ESTOPPED FROM EVADING ITS ENFORCEMENT

13.

Defendant is not a signatory to the Agreement, but Defendant both knowingly exploited and is a direct beneficiary of it.

14.

Defendant was instrumental in the negotiation and consummation of the Agreement. ECI and Redi-Carpet executed the Agreement in December 2014, but several months prior to that, representatives of Defendant brokered the relationship between ECI and Redi-Carpet. Defendant contacted Infor, who in turn contacted ECI. Defendant represented to ECI that it had a pre-existing

relationship with Redi-Carpet and had been in conversations with Redi-Carpet about potential business opportunities for the preceding months. ECI agreed to Defendant's proposition, and Defendant, in turn, facilitated and brokered the meeting and engagement of Redi-Carpet with ECI.

15.

Defendant was integrally involved in the negotiation between ECI and Redi-Carpet regarding the terms of the Agreement. Throughout the negotiation process, in fact, Defendant directly negotiated crucial terms of the Agreement on Redi-Carpet's behalf, including pricing. Mr. Aldridge and/or his colleagues were in touch with representatives of Defendant throughout the negotiation process and typically dealt with Defendant as the primary voice of Redi-Carpet in connection with the negotiation of the Agreement.

16.

Defendant did not disclose to ECI, however, that it was simultaneously negotiating its own agreement with Redi-Carpet. As a matter of practice, ECI manages its own software implementation projects. It has never worked with a separate company to manage the implementation of the SyteLine software and did not expect this Agreement to be any different. ECI was therefore surprised when it learned within days after executing the Agreement that Defendant had executed its own separate agreement with Redi-Carpet to manage ECI's process of installing the SyteLine software. As ECI has alleged in the underlying arbitration, Defendant's insertion of itself into this process created significant problems, added no value, and ultimately resulted in significant disruption and interference with the Agreement. In other words, Defendant directly took over providing (and being paid by Redi-Carpet) for the management services that ECI was expecting to provide (and be paid for). By doing so, Defendant actively and directly benefited from the Agreement.

17.

Defendant received direct benefits from the Agreement. As an initial matter, Defendant's contract with Redi-Carpet was parasitic to the Agreement. Without the Agreement, Defendant would have no work to do with Redi-Carpet and no revenues to generate. Perhaps more importantly, Defendant's fees under its contract with Redi-Carpet directly carved out for Defendant fees that would have otherwise been generated and retained by ECI. When installing and implementing SyteLine software for its clients, ECI, without exception, manages itself and that process without the aid of outside management companies like Defendant. ECI performs that work on an hourly basis and the revenues generated by its management work is an expected component of ECI's income whenever it installs the SyteLine software for a customer. In this case, ECI explained this to Defendant, and Defendant fully understood ECI's expectation of the scope of its contract. As stated above, Defendant was directly responsible for being the conduit for communication between ECI and Redi-Carpet during negotiation of the Agreement. But while Defendant was negotiating the Agreement on Redi-Carpet's behalf, it was simultaneously negotiating its own contract with Redi-Carpet, which it signed mere days after the Agreement. It never revealed this to ECI, and Defendant, vis-à-vis its own contract with Redi-Carpet, expressly carved out for itself revenues that it knows ECI would have otherwise generated through the time it spent managing the Project. Redi-Carpet agreed to pay ECI an hourly rate under the Agreement, and by Defendant carving out for itself the management scope of work, it both denied ECI that potential revenue to come from the additional hourly work necessary to manage the Project, while also taking advantage of what it saw as an ambiguity in the contract (*i.e.*, whether ECI would be managing the Project or not) that it both brokered and helped negotiate on Redi-Carpet's behalf.

18.

Defendant was directly involved in overseeing the implementation process. Indeed, while ECI's job on the Project was described as being "[r]esponsible for leading the implementation of SyteLine including planning, recommendation, research, personalization, development, and overall implementation of SyteLine," Defendant's job was described as being "[r]esponsible for implementing a project management methodology that promotes successful initiation, planning, design, execution, monitoring, controlling and closure of the project. [Defendant] will manage the project plan and budget while communicating project needs, status, plan, risks, and issues." In other words, there was tremendous overlap between the two parties' respective roles in implementing the SyteLine software. But for Redi-Carpet executing the Agreement with ECI, Defendant would have had no role to play or any involvement in the Project at all. Defendant would also have failed in its work for Redi-Carpet in finding someone to implement the SyteLine implementation.

19.

Moreover, Defendant placed employees on the Project's Steering Committee, whose role was described as being "[r]esponsible for representing their organization & functions throughout the project lifecycle, providing resources to the business team, required to attend tollgates and signoff on project deliverables, agreeing that the solutions meet the needs of their organization." In internal company presentations, Defendant was represented as having an equal role to that of ECI in completing the successful implementation of the SyteLine software. Again, in the absence of the Agreement, Defendant would have missed out entirely on its agreement(s) with Redi-Carpet to help in the installation of the SyteLine software. There is no question Defendant received a direct financial benefit from Redi-Carpet's and ECI's choosing to execute the Agreement.

20.

Defendant also knowingly exploited the terms of the Agreement. ECI conveyed to BDO in the months leading to the execution of the Agreement that it managed its own projects. Unbeknownst to ECI, Defendant was simultaneously negotiating its own contract with Redi-Carpet to manage ECI's implementation of the SyteLine software. Defendant knowingly exploited perceived ambiguities in the Agreement (*i.e.*, whether ECI would be managing its own project) and negotiated for itself a management role on the project, which would, among other things, divert revenue to itself that would have otherwise been earned by ECI. Furthermore, once the Project was underway, Defendant repeatedly communicated to Redi-Carpet deadlines and milestones that ECI expressly represented to Defendant were not practical and that it could not reasonably accomplish. On information and belief, ECI alleges that Defendant had bonuses and/or other financial incentives tied to these accelerated (unrealistic) timeframes it was so strongly advocating to Redi-Carpet.

21.

Moreover, Defendant had never previously consulted on or managed the implementation of the SyteLine software for its clients, and by inserting itself into its "management" role on the Project, Defendant was able to learn a great amount about the process from ECI. As a result, Defendant has subsequently been able to market itself as being able to handle implementation of this type of enterprise software. On information and belief, Defendant may have already procured business implementing the SyteLine system for other companies by taking advantage of the processes and work product it obtained from ECI. After having "pirated" such information from ECI, Defendant positioned itself to take over the balance of the Project from ECI, should ECI fail to meet the aggressive timetables Defendant falsely conveyed to Redi-Carpet. Whether Defendant

was motivated by financial incentives from Redi-Carpet tied to meeting the artificial deadlines or whether Defendant was motivated to impose aggressive timetables to position itself to take the business from ECI, Defendant was intentionally exploiting the terms of the Agreement for its own gain.

22.

Defendant was not a signatory to the Agreement. Nevertheless, Defendant knowingly exploited and received direct benefits from the contractual arrangement between ECI and Redi-Carpet, and therefore it would be inequitable and unfair to allow Defendant to avoid enforcement of the arbitration clause of the Agreement. *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006); *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014); *Legacy Wireless Servs., Inc. v. Human Capital, L.L.C.*, 314 F. Supp. 2d 1045 (D. Or. 2004).

23.

ECI's claims against Defendant relating to its role in executing and implementing the terms of the Agreement arise from the same set of operative facts underlying the claims in the Arbitration.

**JURISDICTION AND VENUE**

24.

This Court has subject-matter jurisdiction over the Petition pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity of citizenship exists among the parties, and the amount in controversy exceeds $75,000.00, exclusive of interests and costs, because, in the underlying arbitration, ECI is seeking damages against Defendant of at least $2,000,000.00.

///

///

25.

This Court also has personal jurisdiction over Defendant by virtue of Defendant being an effective signatory to the Agreement under the estoppel doctrine outlined above. Further, Defendant had and has the requisite minimum contacts with the State of Oregon sufficient that the exercise of personal jurisdiction by this Court over Defendant would not offend traditional notions of fair play and substantial justice, and such exercise is thus permitted by the Oregon and United States Constitutions. Defendant is a Delaware limited liability partnership that is registered to do business as a foreign LLP in the State of Oregon. Defendant is also allied with Perkins & Company, P.C., dba Perkins & Co., an Oregon corporation with its principal place of business in Oregon, and Defendant expressly markets its services within Oregon and to Oregon residents. Further, Defendant purposefully directed its activities towards ECI in Oregon vis-à-vis its efforts in executing its agreement with Redi-Carpet to manage or oversee the implementation of the SyteLine software. Defendant has purposefully availed itself of the benefits and privileges of the State of Oregon regarding its business dealings with ECI and its other business activities in Oregon. And ECI has suffered its injuries in Oregon.

26.

Venue in this District under 28 U.S.C. § 1391(a) is proper because a substantial part of the events or omissions on which the claims alleged herein are based occurred in this judicial district in the State of Oregon and because there is personal jurisdiction over Defendant in this District.

**FIRST CLAIM**
**(Order Compelling Arbitration Pursuant to 9 U.S.C. § 4)**

27.

ECI re-alleges and incorporates herein the allegations contained in paragraphs 1 through 26, above.

28.

There is no dispute that the Agreement has a valid and enforceable arbitration provision and that both ECI and Redi-Carpet have already submitted to the jurisdiction of the Arbitration supervised by ASP.

29.

Defendant has availed itself of the benefits of the Agreement and has both knowingly exploited the Agreement and directly benefited from its role in purporting to assist Redi-Carpet and manage ECI in the execution and implementation of the Agreement.

30.

Defendant's work on the Project, and the claims arising out of Defendant's actions, are inextricably intertwined with the merits of the pending Arbitration.

31.

Though Defendant is not a signatory to the Agreement, Defendant is estopped from avoiding enforcement of the arbitration clause of the Agreement now.

32.

Pursuant to Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4, this Court has authority to compel Defendant to be joined as a party in the Arbitration.

**PRAYER FOR RELIEF**

WHEREFORE, ECI requests judgment as follows:

1.   That the Court issue an Order, pursuant to Section 4 of the Federal Arbitration Act, compelling Defendant to participate in, and be joined as a party in, the pending arbitration before ASP, ASP No. 160610.

2. Such other and further relief as the Court deems just, equitable, necessary and appropriate.

DATED: April 27, 2018. **HARRIS BERNE CHRISTENSEN LLP**

By: s/ Adam S. Heder
    Craig R. Berne, OSB #874202
    craig@hbclawyers.com
    Shawn M. Lindsay, OSB #020695
    shawn@hbclawyers.com
    Adam S. Heder, OSB #151144
    adamh@hbclawyers.com
    Of Attorneys for Eclipse Consulting, Inc.